CALVIN J. GARDNER *v.* THE HAMILTON MUTUAL INSURANCE
COMPANY.

Where, by an act of the legislature of Massachusetts three independent mutual
insurance companies are incorporated into one, under a new name, with a
provision that the act "shall not affect the legal rights of any person," nor
take effect until it shall be accepted by the members of said corporations
respectively, at meetings called for that purpose," a member of one of the
old corporations, not expressly assenting to such act, is not, by the mere force
thereof, constituted a member of the new organization.

His rights as a member of one of the original corporations, are in no way
impaired by the act creating the new corporation; and he or his assignee must
seek any remedies they may be entitled to, against the original corporation
of which he was a member.

Until, by his assent, he becomes a member of the new corporation, there is no
privity of contract between him and such corporation.

ACTION on policy of insurance against loss by fire.

The cause was referred to a referee, who found these facts:

On the 15th of February, 1852, the Bowditch Mutual
Insurance Company issued the policy upon which the action
is brought, to one John Hitchins, for $1,000, for five years,
upon a dwelling house owned by him in the city of Troy.
The Bowditch Mutual Insurance Company was, at the time,
a corporation created by the legislature of Massachusetts, and
located at Salem in that State. On the 25th August, 1854,
the property was totally destroyed by fire, and on or
before the 5th September, 1854, proofs of loss were duly
served upon the defendants, and on the 11th December,
1854, Hitchins sold and assigned his claim thereon to the
plaintiff.

The alleged connection of the defendants with the policy
arises out of an act of the legislature of Massachusetts, passed
10th February, 1852, as follows:

§ 1. The members of the Bowditch Mutual Fire Insurance
Company, and of the Essex Mutual Fire Insurance Company,
both established in Salem, and the members of the Lawrence
Mutual Fire Insurance Company, established in Lawrence, are
hereby made a corporation, by the name of the Hamilton

Mutual Insurance Company, in Salem, for the term of 28 years, for the purpose of insuring dwelling houses and other buildings, and personal property, against loss by fire, with all the powers and privileges, and subject to all the duties, liabilities and restrictions, set forth in the 37th and 44th chapters of the Revised Statutes, and in all subsequent acts relating to mutual fire insurance companies; provided that said Bowditch Mutual Fire Insurance Company, said Essex Mutual Fire Insurance Company, and said Lawrence Mutual Fire Insurance Company, shall respectively continue to exist as corporations, for the term of two years from the passage of this act, for the purpose of closing their affairs; and also provided that this act shall not affect the legal rights of any person.

§ 2. This act shall not take effect until it shall be accepted by the members of said corporations, respectively, at meetings called for that purpose.

This law took effect thirty days after its passage. Meetings of the members of each of the three companies were held on the 30th March, 1852. At each of these meetings, the members attending voted to accept the new charter, and on the same day the Hamilton Mutual Insurance Company was organized by the election of officers. Hitchins was not present at the meeting of the members of the Bowditch Mutual Insurance Company, or never in any way consented to become a member of the new corporation, unless the presentation of a claim against the defendants, for the amount of the insurance, accompanied with proof of the loss, constituted such consent. Such claim and proof of loss were presented within the period fixed by the by-laws of the company, but rejected.

The referee held and found as matter of law that by force of these proceedings, Hitchins became a member of the Hamilton Mutual Insurance Company, and entitled to the same rights, and subject to the same liabilities as though originally insured in that company.

The referee further found as facts, that after the execution of the policy (and in fact in the spring of 1852), extensive alterations and repairs of the building insured, were made

by one Birge, who had entered into the possession of said premises under a contract to purchase the same; that while said alterations and repairs were in progress of making, the risk and liability of the dwelling insured to burn, were, during the progress of such work, considerably increased, but the loss did not happen by reason of such increased risk; that such repairs and alterations *were ordinary*, and did not, when completed, increase the liability of such buildings to burn or render the risk more hazardous. It is declared in the policy that it shall be subject to the provisions, conditions and limitations of the charter and by-laws of the company. The 14th article of the by-laws declares that "if the risk on any property insured shall be increased by any of the circumstances disclosed in the application, or by the erection or *alteration* of any building, the policy shall be void, unless an additional premium and deposit shall be paid." The referee found, as matter of law, that notwithstanding this provision, the making of the alterations and repairs in the manner proved, was not a violation of the terms of the policy.

The building was destroyed by fire on the 25th August, 1854, and Hitchins sustained a loss to the full amount of the policy. Notice and proof of the loss were seasonably sent by mail to the defendants. On the 4th December following, the president of the defendants' company notified Hitchins of the rejection of his claim. He states the controlling reasons to be: 1st. The sale of the premises, whereby Hitchins' interest had really become extinct, and could only be revived by breach of the contract on the part of the purchaser; 2d. That the interior of the house had been rebuilt by the purchaser and that the defendants should not be held liable to pay for improvements made by him, nor for the value of the old premises which had been nearly destroyed by the alterations. 3d. That the hazard having been materially increased by the alterations, the policy was void.

The referee decided, as matter of law, that inasmuch as the defendants did not object to the claim upon the ground that Hitchins was not a member of their company, they are now estopped from taking that objection.

It appeared on the trial (although there is no finding on the subject) that after the act incorporating the defendants had been accepted by the three companies, the defendants agreed to indemnify the Bowditch Insurance Company against its policies yet outstanding, and had been paid for such reinsurance or indemnity.

Upon the trial the plaintiff's counsel was allowed to give evidence in respect to the pecuniary condition of the Bowditch company, and the manner in which its funds had been invested or disposed of. This testimony was objected to and an exception taken to its admission.

The plaintiff was also permitted to prove that the defendants had paid various losses to other persons, upon policies issued by the Bowditch company. This evidence was also objected to and an exception taken.

The referee gave judgment for the plaintiff for the amount claimed, which judgment was affirmed at the General Term of the Supreme Court, and the defendants bring this appeal.

*M. I. Townsend,* for the plaintiff.

*John H. Reynolds,* for the defendants.

WRIGHT, J. In any aspect of the case, there are but two questions in it of importance: 1st. Are the defendants liable to Hitchins or his assignee, for the loss; and, 2d. If so, was the policy vitiated by altering and repairing the building in 1852. Both questions arise, should the defendants be adjudged liable; but if the first be determined adversely to the plaintiff, the other need not be considered.

To maintain his action the plaintiff is bound to show a contract of insurance subsisting, at the time of the loss, between Hitchins, his assignee, and the defendants. None existed, unless by the mere force and operation of the statute incorporating the defendants, the contract made with the Bowditch Mutual Insurance Company was transferred to the defendants, so as to substitute the latter, without any assent of the contracting parties, in the place of the original insurers; an exercise of legislative power, in my judgment,

that would have been wholly indefensible. But such was not the intent or effect of the statute referred to. Its purpose was to create a new corporation, to be constituted and made up, in the first instance, of the members of the Bowditch company and two others therein specified. The new corporation was made subject to the general laws of the State of Massachusetts regulating mutual fire insurance companies; and it was expressly provided that the act "shall not affect the legal rights of any person," nor "take effect until it shall be accepted by the *members* of said corporations (the Bowditch company and the two others named) respectively, at meetings called for that purpose." This is the whole of the enactment, except that it was provided that the three companies proposed to be made into one by the act, should respectively continue to exist as corporations for the term of two years, for the purpose of closing their affairs. There is nothing in its provisions indicating an intention to affect or impair the rights of parties under subsisting contracts with the companies proposed to be consolidated, nor, without their consent, to transfer such contracts to the new organization. Had the statute thus attempted to affect individual rights, it would to that extent have been void. But nothing of the kind is indicated. On the contrary, it is expressly provided that "this act shall not affect the legal rights of any person."

As has been stated, the purpose contemplated by the statute was the creation of a new corporation, to be constituted, in the first instance, of the members of the preëxisting companies, and to that end it authorized the transfer of the policies of the latter companies to the new one. But a member of one of the old companies, who did not expressly assent to the act, was not by the mere force thereof constituted a member of the new organization. None of the members of the old companies could become members of the new one until they were insured therein, and they could not be insured there without their consent, for such insurance involved new and different liabilities. To create any contract with the new corporation, it was therefore necessary that the

policies of the old companies should be transferred to the new, making a new party to the contract, and discharging the old one, and it was also necessary to make the members of the old companies members of the new one. No such result was effected, so far as Hitchins, the plaintiff's assignee, was concerned. His contract was with the Bowditch Mutual Insurance Company, and his rights under it could not in any way be impaired without his consent. He had the right to stand upon it, and insist that no change should be made without his assent in the parties, or in its terms or conditions. By the express terms of the act incorporating the defendants, this right was saved to him, for it was not " to affect the legal rights of any person." He never assented to a change of his relations, or to the discharge of one contracting party and the substitution of a new one, or to the transfer of his contract to the defendants. Neither by his own consent or otherwise did he ever become a member of the defendants' company. He was not a member by virtue of the act of the 10th of February, 1852, and its acceptance by the Bowditch company, and up to the time the loss occurred, he had done nothing, by act or declaration, evincing his willingness or intention to become such member, nor in any way consented to accept the defendants as his insurers. He could not then have been sued by the defendants for premiums or assessments, simply for the reason that there was no contract subsisting between them. (*Hamilton Insurance Company* v. *Hobart*, 2 Gray, 543.) If there were none, of course there was no obligation on the part of the defendants to respond for the loss, or any right of action in Hitchins, or his assignee.

My conclusion is that the plaintiff was not entitled to recover for the loss against the defendants. There never was any contract of insurance between his assignor and them. Hitchins never became a member of the defendants' company, and has no claim against it. There is certainly nothing in the point that the defendants are estopped from controverting his membership. It is true that the claim was rejected by them, upon other grounds than that Hitchins

was not a member of the company, or rather in stating objections ·to it this was not enumerated ; but there is nothing in the case showing that he would have acted differently if the objection had been made, or that he has lost anything by the omission to state it. The essential elements of an estoppel are wanting.

Having reached the conclusion that the plaintiff had no cause of action against the defendants, it is unnecessary to examine the question whether the alterations made in the building insured were of such a character as vitiated the policy of the Bowditch company within the fourteenth article of the by-laws.

The judgment of the Supreme Court should be reversed and a new trial ordered.

BROWN, J.    The plaintiff is the assignee of one John Hitchins, and the policy upon which the action is brought was made between him and the Bowditch Mutual Insurance Company, created under the laws of the State of Massachusetts. The policy bears date February 15th, 1852, and insures a dwelling house in the city of Troy for $1,000, for the period of five years. The loss occurred on the 25th of August, 1854. On the 10th of February, 1852, the legislature of Massachusetts passed an act by which the members of the Bowditch Mutual Fire Insurance Company, the Essex Mutual Fire Insurance Company and the members of the Lawrence Mutual Insurance Company were made a corporation, by the name of the Hamilton Mutual Insurance Company, for the term of twenty-eight years, for the purposes of insuring dwelling houses and other property against loss by fire, subject to the Revised Statutes and all subsequent acts in regard to mutual fire insurance companies. It was also provided that the three insurance companies should continue to exist as corporations for the ·term of two years from the passage of the act, and·that the act should not affect the legal rights of any person. It was also provided that before the new act should take effect, it should be accepted by the members of the existing corporations respectively, at meetings

called for that purpose. The referee found as a fact that there was no evidence to show that Hitchins was present at or took any part in the proceedings of the meeting at which the Bowditch company accepted the act to incorporate the Hamilton company, nor to show that he gave any express or implied assent to become a member of the Hamilton company, except the presentation of his claim for the loss by the destruction of the insured premises. The absence of any proof of this kind is decisive against the plaintiff's claim, for it shows there was neither contract nor privity of any kind between the plaintiff's assignor and the defendant. Had the new company been created upon condition that it assumed the obligations and liabilities of the old corporations, then its acceptance of the act of incorporation would have created an obligation to make good the loss. The act, however, imposes no such duty, but by the provision declaring the act should not affect the legal rights of any person, intended to recognize and preserve the rights of the members of the three old companies unimpaired, who declined to become members of the Hamilton company. The insured are members of the company where the insurance is effected, and Hitchins could not become a member of the Hamilton company without some plain and unequivocal act, signifying such an intention, and taking upon himself the responsibilities thereof. The referee employs no inconsiderable part of his argument in support of his decision, to show what was the real purpose and intention of the Massachusetts legislature in the passage of the act to incorporate the Hamilton company. Much of this argument is beside the question in controversy, for there are some things it could not do, however resolute and determined its purpose, and one of them is to make Hitchins a member of the new corporation without his consent, or impair the obligation of his contract of insurance with the Bowditch company. I concur with Mr. Justice HOGOBOOM in the dissenting opinion, delivered in the court below, and think the judgment should be reversed and a new trial ordered, with costs to abide the event.

All the judges concurring, judgment reversed.